IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCILLE H. TELLY, ) | 1:11-cv-0927 AWI SMS |
| ) | |
| Plaintiff, ) | MEMORANDUM OPINION |
| ) | AND ORDER ON |
| v. ) | DEFENDANTS' MOTION FOR |
| ) | SUMMARY JUDGMENT |
| CITY OF LOS BANOS; LOS BANOS ) | |
| POLICE DEPARTMENT; DETECTIVE ) | |
| JUSTIN MELDIN; and DOES 1 ) | Doc. # 23 |
| through 25, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

    This a civil rights action for damages against defendants City of Los Banos, Los Banos Police Department, et al. (collectively, "Defendants") by plaintiff, Lucille H. Telly ("Plaintiff").  Currently before the court are Defendants' motion for summary judgment, Plaintiff's motion to strike a portion of Defendants' Statement of Undisputed Material Facts submitted in support of their motion for summary judgment, and Plaintiff's motion to amend the complaint to add and individual defendant, Preston Jelen.  On August 23, 2012, the court vacated the dates for oral argument on the motions and ordered that Defendants' motion for summary judgment would be held in abeyance until a proposed amended complaint was filed. The court is now in receipt of Plaintiff's First Amended Complaint ("FAC") which, the court notes is identical to the original complaint except for the addition of Defendant's Jelen's name to the allegations set forth.  The court also notes Defendants' statement of non-opposition to the amendment.  Given the minor nature of Plaintiff's amendment and Defendant's non-

opposition and the subsequent filing of Plaintiff's opposition and Defendant's reply to the motion for summary judgment, the court now considers the matter submitted upon the pleadings submitted and proceeds herewith to render its opinion.

## PROCEDURAL HISTORY

This case was removed by Defendants from Merced Superior Court on June 7, 2011. The case had originally been filed in Superior Court in May 9, 2011. Removal jurisdiction is based on Plaintiff's first claim for relief which, although not very explicit as to the exact violation, is interpreted to allege that Plaintiff suffered a violation of her Fourth Amendment right against arrest without probable cause in violation of 42 U.S.C. § 1983. The instant motion for summary judgment was filed by Defendants on July 18, 2012. No prior dispositive motions were filed in this court. Plaintiff's motion amend/join additional defendants was filed on August 1, 2012, and Plaintiff's motion to strike portions of Defendants's statement of undisputed material facts was filed on August 14, 2012. Plaintiff's opposition to the motion for summary judgment was filed on August 13, 2012, and Defendants' reply was filed on August 20, 2012.

## UNDISPUTED MATERIAL FACTS

Plaintiff moves to strike numbers one through twenty-eight of Defendants' proffered undisputed material facts on the ground of relevance. The court has examined the complained-of facts and agrees that they are, for the most part, irrelevant to the court's determination of Defendants' summary judgment motion. Plaintiff's motion to strike will therefore be granted except to the extent some minimal information must be included for the purpose of providing context for relevant facts. The following factual narrative is excerpted from Defendants' proffer of undisputed material facts. The facts set forth are uncontested by Plaintiff unless otherwise stated.

On August 10, 2010, Plaintiff and members of Plaintiff's family including her husband Ernesto Telly Sr. ("Ernesto") drove from San Jose to Los Banos, California, for the purpose

of picking up their son, Anthony Telly ("Anthony"), who had been assaulted earlier in the day by persons unknown. As Plaintiff and other family members were departing Los Banos to return to San Jose, they spotted, and were spotted by, a truck carrying Anthony's assailants. Plaintiff, who was driving one of the vehicles, pulled to the side of the road as the truck carrying the assailants made a U-turn and parked. Ernesto exited the vehicle being driven by Plaintiff and approached the truck carrying the assailants. As Ernesto approached the truck, he was shot in the leg by one of the assailants and the truck drove away. Ernesto was assisted into the vehicle being driven by Plaintiff by another relative. Another vehicle, which was being driven by Ernesto's father, Albert, began to follow the route taken by the assailants. At Ernesto's request, Plaintiff drove her vehicle after Albert to stop him from giving chase and risking being shot himself.

During Albert's pursuit of the truck carrying the assailants, Anthony called 9-1-1 on a cell phone and told the operator that they were in pursuit of a truck carrying persons who had shot his father. After overtaking and stopping Albert, Plaintiff changed direction and proceeded in the direction of the Los Banos Community Hospital ("Hospital"). At this point the 9-1-1 operator called back and Anthony informed the operator that his parents were proceeding to the Hospital with his wounded father and that Anthony was in a truck following his parents.

The shooting happened to be witnessed by the wife of the Los Banos Police Department Commander Rey Reyna. She called Commander Reyna by cell phone and reported what she had witnessed and the direction of travel of the vehicles. Commander Reyna was near the area and noted a vehicle that fit the description of Plaintiff's vehicle traveling at a high rate of speed. Commander Reyna (who the court infers was driving an unmarked vehicle) continued to follow Plaintiff's vehicle until marked police cars arrived to pursue Plaintiff's vehicle. Thereafter, two marked police cars followed Plaintiff's vehicle with emergency lights and sirens activated. Plaintiff admits she observed at least one police

car with emergency lights activated and that she heard a siren at one point.  Plaintiff's hazard lights were activated.

Although Defendants' undisputed material facts lay out the events of Plaintiff's trip to the Hospital in some detail, there appears to be no dispute that, in sum, at least two marked police cars with lights and sirens activated witnessed Plaintiff drive at a speed at or exceeding 60 miles per hour through portions of downtown Los Banos, fail to stop at several stop signs and drive through at least one red light.  Ultimately, Plaintiff arrived at the Hospital parking lot.  Officer Jelen, the first officer to pull in behind Plaintiff's car "initiated a felony stop" with his gun drawn.  Defendant's Undisputed Material Fact ("UMF") # 60.  Another passenger in Plaintiff's car, Ernesto Jr., immediately jumped out of the car and stated that "someone had been shot."  UMF # 61.  Officer Juelen looked inside the car and observed that Ernesto Sr. was bleeding.  Ernesto Jr. was handcuffed and placed in the back of a patrol vehicle.  Plaintiff was directed out of the vehicle and told to lie on the pavement in the prone position.  UMF # 64.  "Officer Jelen summoned emergency room staff and advised them of the gunshot wound.  Ernesto Sr. was conscious and [was] placed on a gurney and taken into the [H]ospital."  UMF # 65.

Plaintiff was transported to the Los Banos Police Department for questioning regarding the shooting.  The court notes that Defendants' UMF's do not specify whether Plaintiff had been handcuffed and told that she was under arrest in the Hospital parking lot.  Detective Melden of the Los Banos Police Department ("LBPD") questioned Plaintiff concerning the identities of the assailants.  Plaintiff informed Detective Melden that the reason Plaintiff did not stop for the officers following her was that she was "trying to get her husband to the hospital."  UMF # 72.  Although the parties disagree to some extent what information passed between Commander Renya and Officer Jelen and what sections of the Vehicle Code were cited, the parties do not disagree that Officer Jelen completed a probable cause statement charging Plaintiff with violation of two vehicle code sections.  Plaintiff was booked at the

4

LBPD. She was transported to the Merced County Correctional Facility on August 11, 2010 and was released on bail the same day. The court notes there are no allegations of excessive force by Los Banos Police. Plaintiff's car was released to Ernesto Jr. on August 11, 2010.

The Merced County District Attorney filed a Complaint charging Plaintiff with one count of violation of California Vehicle Code section 23103(a). The District Attorney dismissed the Complaint on November 11, 2010.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party always bears the initial responsibility of informing and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Although the party moving for summary judgment always has the initial responsibility of informing the court of the basis for its motion, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007). A party that does not have the ultimate burden of persuasion at trial – usually but not always the defendant – "has both the initial burden of production and the ultimate burden of persuasion on the motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not

have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

### I. Plaintiff's First Claim for Relief

Plaintiff's FAC alleges a single claim for relief pursuant to 42 U.S.C. § 1983 and alleges an additional five claims for relief under state common law including claims for false arrest, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress and negligence.  As an initial matter, the legal theory behind Defendants' violation of Plaintiff's Fourth Amendment rights against unreasonable seizure is not stated with as much specificity as might be desired.  Plaintiff alleges as follows:

> When Plaintiff arrived at the [Hospital], Defendant Melden, Defendant Jelen, and other members of the [LBPD] wrongfully detained her, and delayed treatment of her gravely wounded husband. [Doc. # 35 at ¶ 8]. [¶] That subsequently, Defendant Melden, Defendant Jelen and Does through 10, inclusive, having knowledge of the circumstances under which Plaintiff was operating her vehicle, wrongfully and tortiously arrested Plaintiff, impounded her vehicle, and caused Plaintiff to be incarcerated, in violation of Plaintiff's civil rights in accordance with 42 U.S.C. § 1983 et seq. [Doc. # 35 at ¶ 9] [¶] [A]s a direct and proximate result of Defendants' actions. Plaintiff was falsely detained, arrested, and incarcerated, and sustained general damages for pain and suffering, mental and emotional distress, and nervousness, and anxiety, and damage to her reputation and other general damages in an amount within the jurisdiction of the Superior Court.

Doc. # 35 at ¶ 11.

Notwithstanding the vagueness of Plaintiff's contentions regarding her Fourth Amendment claim, the court will, for purposes of this analysis only, assume Plaintiff was placed under arrest at the time she got out of her car at the Hospital and remained under arrest until her release on bail the following day.  Further, based on Plaintiff's opposition to Defendant's motion for summary judgment, the court infers that it is Plaintiff's contention that the arrest was without probable cause, as opposed to having been accomplished by means of excessive force.  The court also presumes that it is Plaintiff's contention that the seizure and impoundment of Plaintiff's car was in violation of Plaintiff's Fourth Amendment rights for the same reason as Plaintiff's arrest.

"Under the Fourth Amendment, a warrantless arrest requires probable cause. [Citation.] Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Alternatively, this circuit has found probable cause where "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." United States v. smith, 790 F.2d 789, 792 (9th Cir. 1986).  "Generally, 'an officer need not have probable cause for every element of the offense.' [Citation.]" Lopez, 482 F.3d at 1072 (quoting Gasho v. United States, 39 F.3d 1420, 1428 (9th Cir. 1994)).

Plaintiff contends that "neither Officers Jelen or Meldon had probab[le] cause to arrest Plaintiff under the circumstances of this case." Doc. # 32-1 at 6:9-10.  Unfortunately, Plaintiff launches directly into an extended argument as to why qualified immunity does not apply without explaining how or why the court should find the arrest was without probable cause. The matter is far from self-evident.  "If an officer has probable cause to believe that an

individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  It is undisputed that Officers Jelen and Meldon were following Plaintiff as she drove thought Los Banos at a "high rate of speed," fail to stop for multiple stop signs and run at least one red light.  This was accompanied, of course, by Plaintiff's failure to stop when seeing the emergency lights of pursuing police cars and at least once hearing the siren.

In her opposition to Defendants' motion for summary judgment, Plaintiff appears to put forward two arguments that could be interpreted as arguments against the existence of probable cause for the arrest.  The first is the argument that Plaintiff lacked the mens rea element of each of the traffic violations charged.  Plaintiff notes that she was initially charged with violation of Cal. Vehicle Code § 2800.1 (Flight From Pursuing Police Officer) which requires that the defendant "willfully" flee a pursuing police officer with intent to evade or elude.  What is plainly evident in the undisputed facts of this case drove her car so as to avoid stopping for police or anyone else.  It is hard to imagine a clearer example of willful conduct.  The fact that Plaintiff did not stop for a reason that was arguably laudable does not change matters.  The statute does not require malice, simply willful conduct which is plainly evident in the undisputed facts of this case.

With regard to the other charge that was later filed – violation of Cal. Vehicle Code § 2800.2 (Willful or Wanton Disregard While Fleeing), Plaintiff's argument is similarly flawed.  While the statute requires the defendant to have "driven in a willful or wanton disregard for the safety of person or property," the statute also defines "willful or wanton disregard" as, *inter alia*, driving while fleeing a police officer during which time "three or more violations that are assigned a traffic violation point count under Section 12810 occur." Id.  Since each of the violations witnessed by the officers – speeding, running red light, and failure to stop at a stop sigh each carry one or more points under Vehicle Code Section 12810, the *mens rea* requirement for violation of section 2800.2 is met.  The court must conclude that Officers

9

Jelen and Meldon had probable cause to arrest Plaintiff.

The second argument that can be inferred from Plaintiff's opposition to Defendants' motion for summary judgment is the contention that necessity somehow rendered Plaintiff's actions lawful when they would have been unlawful. In this regard, it appears that Plaintiff fundamentally misunderstands the defense of necessity. While Plaintiff's discussion tends to use the terms "duress" and "necessity" more-or-less interchangeably, the two concepts are distinct and the difference between the two makes a difference in the court's analysis.

> Duress is an effective defense only when the actor responds to an immediate and imminent danger. "[A] fear of *future* harm to one's life does not relieve one of responsibility for the crimes commits." [Citations.] The person being threatened has no time to formulate what is a reasonable and viable course of conduct nor to formulate criminal intent. "The unlawful acts of the person under duress are attributed to the coercing party who supplies the requisite mens rea . . . ." [Citation.] Thus, duress negates and element of the crime charged – the intent or capacity to commit the crime – and the defendant need raise only a reasonable doubt that he acted in the exercise of his free will. [Citation.]

People v. Heath, 207 Cal.App.3d 892, 900 (5th Dist. 1989). Although Plaintiff may reasonably have feared for her husband's life, that fear was not one of imminent harm to her. Plaintiff, in other words, was not under duress as that term is legally defined because there was nothing external to Plaintiff that was imposing any threat of immediate harm upon her.

The situation she describes in the facts of this case are more properly seen as *necessity* because Plaintiff may reasonably have considered a more moderate course of action without harm to *herself*, but may reasonably have chosen to break the law to avoid a greater harm. Plaintiff correctly lists the elements of the defense of necessity, and to the extent Plaintiff applies the facts of her case to those elements, she makes a plausible case for the application of the defense. The court has no doubt that the applicability of the defense of necessity to the facts of Plaintiff's case was a significant factor in the eventual dismissal of the charges. However, necessity, unlike duress, "is founded upon public policy and provides a justification distinct from the elements required to prove the crime." Id. at 901. Thus, "[n]ecessity does not negate any element of a crime, but represents a public policy decision not to punish such

10

1 an individual despite proof of the crime. [Citations.]" Id.

2     The fact that the defense of necessity does not negate any element of a crime means that it cannot negate probable cause where probable cause would otherwise exist. Put another way, the defense of necessity cannot be part of the calculus of whether probable cause existed. This harmonizes with the public policy concern raised in Atwater where the Court observed "we have traditionally recognized that a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review." Atwater, 532 U.S. at 347. In other words, Fourth Amendment jurisprudence does not place on law enforcement officers the burden, when they witness a clear violation of the law, to determine on the spot whether the person committing the crime might have a viable necessity defense before placing the suspect under arrest. The court stipulates for purposes of this discussion that Plaintiff was entitled to the defense of necessity. Pursuant to the case authority reviewed here, the court finds that the fact of Plaintiff's entitlement to the defense of necessity has no bearing at all on the existence of probable cause for Plaintiff's arrest.

16     The court finds probable cause existed under the undisputed facts of this case for Plaintiff's arrest. Because probable cause existed, there was no Fourth Amendment violation. Defendants are therefore entitled to summary judgment with regard to Plaintiff's first claim for relief.

**II. State Law Claims**

    Defendants' motion for summary judgment also requests the court's decision on Plaintiff's state law claims. Because the court will grant summary judgment as to Plaintiff's federal claim for relief, there is no longer any federal claim left in this case. Jurisdiction in this case is based on the presence of a federal question, and the court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Under 28 U.S.C. § 1367(c) (3), a district court may decline to exercise jurisdiction over supplemental state law

11

claims if "if the district court has dismissed all federal claims over which it has original jurisdiction." Generally, "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367-368 (9th Cir. 1992). When removal is based on the presence of a federal cause of action, a district court may remand pendent or supplemental state law claims to the state court once the federal claims have been eliminated. See Lee v. City of Beaumont, 12 F.3d 933, 937 (9th Cir. 1993). "[I]t is generally preferable for a district court to remand remaining pendent claims to state court." Id.

Beyond the general preferability of remand of state law claims, the court finds remand is particularly appropriate in this case because remand in this case may avoid the prejudice that could result from the fact Plaintiff's state law claims are not adequately stated under standards applicable in federal court. Each of Plaintiff's state law claims consist of a one or two-sentence conclusory statement of entitlement to relief for the alleged wrong. Such bare-bones pleading is not sufficient to sustain a claim under federal pleading standards. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal"). By declining to address Plaintiff's state law claims, the court intends that the parties may address the pleading problems, if any, of the state law claims in state court.

THEREFORE, for the reasons stated above, Defendants motion for summary judgment is hereby GRANTED with respect to Plaintiff's FIRST CLAIM FOR RELIEF ONLY. The court hereby exercises its discretion to decline supplemental jurisdiction over Plaintiff's state

12

law claims.  The Clerk of the Court shall enter judgment as to Plaintiff's first claim for relief. All remaining claims are hereby REMANDED to the Superior Court of the County of Merced. Plaintiff's motion to strike is GRANTED except to the extent noted above.  All dates and orders relating to the Jury Trial date of October 16, 2012 are VACATED.

IT IS SO ORDERED.

Dated:     October 1, 2012                                    _____
                                                                CHIEF UNITED STATES DISTRICT JUDGE